UNIGARD MUTUAL INSURANCE COMPANY v. JOHN RANDOLPH INGRAM, COMMISSIONER OF INSURANCE OF THE STATE OF NORTH CAROLINA

No. 8410SC177

(Filed 18 December 1984)

1. **Insurance § 79.1— insurance rate case—scope of review**

    The scope of review of an automobile liability insurance rate case is that provided by G.S. 150A-51.

2. **Insurance § 79.1— automobile liability insurance—requests for deviation from rates—clean risks ceded to Reinsurance Facility**

    In ruling upon an insurance company's request pursuant to G.S. 58-124.23 for deviation from automobile liability rates established by the Rate Bureau, the Commissioner of Insurance exceeded his statutory authority in extending the requested rate deviation to "clean risks" ceded to the N.C. Reinsurance Facility. G.S. 58-248.33(1).

APPEAL by respondent from *Beaty, Judge*. Judgment entered 12 January 1984 in Superior Court, WAKE County. Heard in the Court of Appeals 13 November 1984.

This is a civil action wherein petitioner, Unigard Mutual Insurance Company, seeks a declaratory judgment concerning the validity and effect of certain actions taken by respondent, Commissioner of Insurance, in connection with petitioner's request pursuant to N.C. Gen. Stat. Sec. 58-124.23 for deviation from basic rates. On 12 January 1984 Judge Beaty entered an order declaring that the Commissioner exceeded his statutory authority in taking the action challenged by petitioner; the court also declared that the approval of petitioner's deviation request was otherwise proper, valid, and effective. Respondent Commissioner of Insurance appealed.

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, by Henry A. Mitchell, Jr., and Julian D. Bobbitt, Jr., for petitioner, appellee.*

*Attorney General Rufus L. Edmisten, by Special Deputy Attorney General Isham B. Hudson, Jr., for respondent, appellant.*

HEDRICK, Judge.

The record reveals the following undisputed facts:

Under North Carolina law an insurance company doing business in this State is required to insure all applicants for motor vehicle liability insurance. When a particular applicant is judged by the insurance company to present an unacceptable risk, the company is permitted by statute to "cede" the risk of loss on that insured to the North Carolina Motor Vehicle Reinsurance Facility. When a policy is ceded to the Facility, premiums are paid to the Facility, less an "expense allowance" provided to the insurance company as reimbursement for costs incurred in establishing, maintaining, and servicing the policies ceded to the Facility. When a loss arises on a ceded policy, the company issuing the policy pays the claim and is reimbursed by the Facility. Under G.S. 58-248.33(1) the Facility is, as a general rule having one exception, to set rates on ceded policies "insofar as is possible, to produce neither a profit nor a loss." All insurance companies writing automobile liability insurance in this State are

required to be members of the Facility. When Facility rates are insufficient to offset losses arising out of ceded policies, such losses are to be "equitably share[d]" by member companies.

Under North Carolina law, automobile insurance rates applicable to the "voluntary" market (i.e., policies issued to insureds deemed "acceptable risks" by a company and thus not ceded to the Facility) are set by the North Carolina Rate Bureau. G.S. 58-124.23 permits companies that desire to do so to deviate from the rates established by the Rate Bureau upon filing a request for such deviation with the Commissioner. The statute provides that the Commissioner "shall approve proposed deviations if the same do not render the rates excessive, inadequate or unfairly discriminatory."

On 1 June 1982 Unigard filed a request for deviation from basic rates with the Commissioner pursuant to G.S. 58-124.23. On 10 June 1982 respondent ruled on petitioner's request in a letter, included in the record on appeal, and quoted below in pertinent part:

> Approval is given to your request of June 1, 1982 for a deviation from the rates of the N.C. Rate Bureau as follows:
>
>     . . .
>
>     10% on non-fleet private passenger auto bodily injury and property damage liability and medical pay voluntary and "clean" ceded risks;

On 7 July 1982 petitioner submitted to respondent a written request that the Commissioner "amend certain portions of its approval letter . . . which relates to extending the insurance rate deviation requested by Unigard to private passenger automobile insurance risks ceded to the North Carolina Reinsurance Facility." On 12 July 1982 Unigard filed a complaint in Superior Court, Wake County, seeking review of respondent's decision pursuant to G.S. 58-9.3 and G.S. 150A-43, a declaratory judgment under G.S. 1-253, and issuance of a temporary restraining order, preliminary injunction, and stay pursuant to G.S. 1A-1, Rule 65, N.C. Rules Civ. Pro., G.S. 58-9.3, and G.S. 150A-48. A temporary restraining order and stay issued that same day, and on 19 July a preliminary injunction and stay issued. On 9 January 1984 following several extensions of time stipulated to by all parties, re-

spondent filed an "answer and counterclaim for declaratory relief." On 12 January 1984 the matter came on for hearing, the trial court considering "the pleadings, the Stipulation of Facts, other matters of record and oral and written arguments of counsel." After making "Findings of Fact" virtually identical to those contained in the "Stipulation of Facts," signed by the parties and filed 12 January, Judge Beaty made conclusions of law and entered an order, quoted in pertinent part below:

### CONCLUSIONS OF LAW

. . .

2. Respondent John Randolph Ingram, Commissioner of Insurance of the State of North Carolina, exceeded his statutory authority in modifying and extending the deviation in requiring the deviation to cover "clean risks" ceded to the North Carolina Reinsurance Facility . . . and the purported modification and addition is invalid.

3. Neither G.S. Sec. 58-248.33(1), G.S. Sec. 58-124.23 nor any other provision of the General Statutes of North Carolina permit the extension of deviations applicable to voluntary market insureds to any other insureds, whether "clean risk" or otherwise, which are ceded to the North Carolina Reinsurance Facility.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED, DECREED AND DECLARED, that:

1. The deviation approval approving petitioner's deviation filing relating to deviation from rates for premiums from the types of insurance in its insurance package program, including "voluntary" private passenger non-fleet automobile insurance, is proper, valid and effective.

2. The added portion of this deviation approval which relates to petitioner's ceded "clean" risks on its "non-voluntary" automobile insurance business . . . is contrary to law, invalid, and respondent, his agents, principal, employees and persons action [sic] on his behalf, directly or indirectly, are hereby enjoined from implementing, enforcing or otherwise acting upon said additions.

[1] In determining the scope of our review in the instant case, we first turn to G.S. 58-9.3, which permits in certain cases a "person aggrieved" by an order or decision of the Commissioner of Insurance to petition for review of that decision in Superior Court. G.S. 58-9.3(b) provides that "[t]he order or decision of the Commissioner if supported by substantial evidence shall be presumed to be correct and proper. . . . The cause shall be heard by the trial judge as a civil case upon transcript of the record for review of findings of fact and errors of law only." This scope of review has been characterized by this Court as "somewhat limited" in comparison with the "substantially broader review . . . provided by G.S. Ch. 150A." *Insurance Co. v. Ingram, Comr. of Insurance*, 34 N.C. App. 619, 635, 240 S.E. 2d 460, 469 (1977). G.S. 150A-43 provides that a person aggrieved by a final agency decision "is entitled to judicial review of such decision" under the Administrative Procedure Act "unless adequate procedure for judicial review is provided by some other statute, in which case the review shall be under such other statute." This Court has said that "adequate procedure for judicial review" under another statute exists only if the scope of review is equal to that set out in G.S. Ch. 150A, Art. 4. *Insur. Co.* at 635-36, 240 S.E. 2d at 470. Accordingly, our scope of review in the instant case is dictated by G.S. 150A-51. *Id.; see also Comr. of Insurance v. Rate Bureau*, 300 N.C. 381, 394-96, 269 S.E. 2d 547, 558-59 (1980).

[2] Respondent assigns error to the court's conclusion that Commissioner Ingram "exceeded his statutory authority in modifying and extending the deviation in requiring the deviation to cover 'clean risks' ceded to the . . . Facility." The Commissioner's authority to act on deviation requests is set out in G.S. 58-124.23, which states: "The Commissioner shall approve proposed deviations if the same do not render the rates excessive, inadequate, or unfairly discriminatory." We agree with appellees that *Comr. of Ins. v. Rate Bureau*, 43 N.C. App. 715, 259 S.E. 2d 922 (1979), *disc. rev. denied*, 299 N.C. 735, 267 S.E. 2d 670 (1980), is persuasive authority on this issue. In that case the Court was confronted with an attempt by the Commissioner to modify a classification plan, submitted to the Commissioner by the Rate Bureau pursuant to G.S. 58-124.19 and 58-124.21. In holding the Commissioner's actions in excess of his statutory authority, this Court said:

The legislative intent is clear. The Rate Bureau is vested with sole authority to determine rates and classifications for motor vehicle insurance, subject to review by the Commissioner. Upon his review, if the Commissioner disapproves the Bureau plan, he must specify "wherein and to what extent" he disapproves it, and he may set a date after which the filing will no longer be effective. He may not, however, submit his own proposals, whether they be deemed "modifications" or "substitutions." Nor may he order his scheme into effect. . . . The Commissioner is a creature of statute and, as such, he may act only to the extent and in the manner legislatively prescribed. . . .

*Id.* at 720-21, 259 S.E. 2d at 925-26. The Commissioner attempts to escape the application of this rule and bring his actions within the scope of his statutory authority by contending that "the filing did not specifically exclude 'clean risks' ceded to the Facility, and inasmuch as it was well known (to insurance companies, at least) that a lot of clean risks were in the Facility . . . the Commissioner was justified in concluding that the deviation proposal included 'proven safe drivers' in the Facility." We find this argument specious. Any misunderstanding under which respondent may have initially labored in regard to the precise parameters of Unigard's proposed deviation was clearly eliminated by petitioner's formal written request for amendment, quoted in part *supra*. However "justified" the Commissioner's initial conclusion, his ruling clearly amounts to a modification of the deviation request filed by petitioners and, as such, exceeds his statutory authority.

The Commissioner also assigns error to the trial court's conclusion that "extension of deviations applicable to voluntary market insureds to any other insureds, whether 'clean risk' or otherwise, which are ceded to the . . . Facility" is unauthorized by any statutory provision. We agree with the trial court's statement of the law. The statute permitting deviations from rates established by the Rate Bureau clearly applies only to the so-called "voluntary market." Indeed, under G.S. 58-248.33(1), rates on policies ceded to the Facility are not set by the Rate Bureau,

but rather by the Facility.[1] G.S. Chap. 58, Article 25A, which sets forth the statutory scheme establishing and regulating the Facility, contains no reference to deviations, and our reading of that Article as a whole persuades us that the Legislature never contemplated that the deviation statute might be extended to rates set under Article 25A.

The judgment of the Superior Court is in all respects affirmed.

Affirmed.

Judges WEBB and HILL concur.

―――――――――

1. Rates set by the Rate Bureau may effectively establish rates for ceded policies in the case of "clean risk" insureds because of the following provision of G.S. 58-248.33(1): "[T]he rates made by or on behalf of the Facility with respect to 'clean risks' . . . shall not exceed the rates charged 'clean risks' who are not reinsured in the Facility." This provision, heavily relied on by respondent, in no way authorizes the extension of deviations to "clean risk" insureds within the Facility.